<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SALIBA INVESTMENT LLC d/b/a J&S MITSUBISHI,<br><br>         Plaintiff/Counterclaim-<br>         Defendant,<br><br>    v.<br><br>MITSUBISHI MOTORS NORTH AMERICA, INC.,<br><br>         Defendant/Counterclaim<br>         Plaintiff. | Civil Action No. 26-05112 (GC) (TJB)<br><br>**<u>OPINION</u>** |

<u>**CASTNER, District Judge**</u>

**THIS MATTER** comes before the Court upon Defendant/Counterclaim Plaintiff Mitsubishi Motors North America Inc. (MMNA)'s Motion for a Temporary Restraining Order and Preliminary Injunction and Plaintiff/Counterclaim Defendant Saliba Investment LLC d/b/a J&S Mitsubishi (J&S)'s Cross-Motion for a Preliminary Injunction. (ECF Nos. 3, 9.) The Court held a hearing on the parties' Motions on July 1, 2026. (ECF No. 19.) The Court has carefully considered the parties' submissions and arguments. For the reasons set forth below, and other good cause shown, MMNA's Motion for a Temporary Restraining Order and Preliminary Injunction is **GRANTED**, and J&S's Cross-Motion for a Preliminary Injunction is **DENIED**.

## I.    BACKGROUND

### A.    Factual Background[1]

Defendant/Counterclaim Plaintiff MMNA is a California corporation with its principal place of business in Tennessee.  (ECF No. 3-2 at 1.)[2]  MMNA is a licensee authorized to use and protect Mitsubishi trademarks, including the word mark MITSUBISHI (U.S. Reg. No. 0,844,427) and the three-diamond Mitsubishi design mark (U.S. Reg. No. 0,931,665).  (*Id.* at 2.)  It distributes Mitsubishi brand motor vehicles, parts, and accessories through a network of authorized retail dealers in the United States.  (*Id.* at 1.)  These dealers, in turn, sell Mitsubishi brand products and provide services, such as warranty repairs, on Mitsubishi brand motor vehicles, parts, and accessories.  (*Id.*)  Frans Jack Vossenberg is the Regional Vice President for the North Region of MMNA.  (*Id.*)  Plaintiff/Counterclaim Defendant J&S was an authorized Mitsubishi dealer and is a New Jersey limited liability company with its principal place of business in Ewing, New Jersey. (ECF No. 9-2 at 1.)  George Saliba is the Dealer Principal and managing member of J&S.  (*Id.*)

### 1.    *Previous Notices of Breach*

Beginning in 2016, MMNA and J&S entered into a series of dealer agreements, each of which typically lasted for three years.  (ECF No. 3-2 at 2.)  By 2023, the parties engaged in several out-of-court disputes over whether J&S materially breached provisions of those agreements.  On August 18, 2023, MMNA sent J&S a Notice of Material Breach, citing staffing deficiencies, and demanded that J&S obtain a qualified parts manager, parts counterman, and service writer by September 15, 2023.  (ECF No. 10-1 at 2; *see also* ECF No. 10-2.)  Whether J&S breached the

---

[1]    The relevant factual background is drawn from MMNA's Notice of Removal and the parties' submissions related to the pending Motions.  (ECF Nos. 1, 3, 9, 10, and 11.)

[2]    Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

then-operative dealership agreement, and whether J&S remedied any breach, is disputed by the parties, (*see* ECF No. 9-7 at 24; ECF No. 10 at 6), but MMNA did not seek to terminate the dealership based on this alleged breach.

On January 16, 2024, MMNA and J&S entered into the most recent agreement (the Dealer Agreement), which authorized J&S to sell and service Mitsubishi vehicles, parts, and accessories from a location at 1721 North Olden Avenue in Ewing, New Jersey.  (ECF No. 3-2 at 2; ECF No. 9-2 at 1-2; *see also* ECF No. 3-5.)  That agreement states that "[a]ny notice of termination by MMNA shall inform [J&S] of the grounds therefor, and any such notice may be withdrawn if during the applicable notice period [J&S] cures to MMNA's satisfaction the condition or conditions upon which the notice is based."  (ECF No. 3-5 at 55.)

On August 5, 2025, MMNA sent J&S an additional Notice of Breach premised on a different issue.  Specifically, MMNA contended that J&S failed to complete certification requirements needed to sell Mitsubishi's Outlander Plug-In Hybrid Electric Vehicle (PHEV). (ECF No. 3-2 at 3; ECF No. 3-6 at 2.)  Those requirements included (1) the installation of certain Electric Vehicle Supply Equipment chargers, (2) the acquisition of special service tools and equipment, and (3) the completion of PHEV specialist training by dealership employees.  (ECF No. 3-6 at 2.)  Because, according to the August 5, 2025 Notice of Breach, J&S failed to satisfy these requirements, J&S was "not qualified to receive, sell, or service Outlander PHEV model vehicles."  (*Id.*)  As with the August 18, 2023 Notice of Breach, MMNA did not ultimately seek to end the dealership relationship.

On October 20, 2025, MMNA sent another Notice of Breach, citing J&S's failure to complete the PHEV specialist training—as it did in the August 5, 2025 Notice of Breach—as well as J&S's failure to maintain the minimum required inventory of Mitsubishi vehicles outlined in

the Dealership Agreement.  (ECF No. 3-2 at 3; ECF No. 3-7 at 2-3.)  MMNA demanded that Saliba meet with Vossenberg during the week of October 27, 2025 to discuss how Saliba intended to cure the breaches in the Dealership Agreement.  (ECF No. 10-1 at 2.)  Saliba did not respond to this demand and, according to Vossenberg, failed to cure the deficiencies identified in the October 20, 2025 Notice of Breach.  (*Id.*)

### 2.    *The Instant Notice of Termination*

Because J&S allegedly "did not take timely action necessary to cure the defaults identified" in the August 5 and October 20, 2025 Notices of Breach, (ECF No. 3-2 at 3), MMNA issued a Notice of Termination on January 14, 2026, (ECF No 3-2 at 3; ECF No. 3-8).  The letter cited three grounds for termination: "[(1) J&S's] repeated failure to require personnel to attend and complete required training; [(2) J&S's] failure to maintain a minimum inventory of Outlander PHEV vehicles for sale to retail customers; and [(3) J&S's] failure to comply with minimum staffing requirements in its service department."  (ECF No. 3-8 at 3-4.)  The Notice of Termination indicated that MMNA would terminate the Dealer Agreement if J&S did not remedy these asserted breaches within 60 days of J&S receiving the Notice.  (*Id.* at 4.)[3]  The Notice also stated that:

> until the effective date of termination, MMNA will continue to conduct business with [J&S] according to the Dealer Agreement, and MMNA expects [J&S] to fulfill its responsibilities and obligations under the Dealer Agreement. MMNA further reserves and does not waive its rights to raise any other breaches of the Dealer Agreement that may exist now or in the future, and to issue notices of breach and/or termination pertaining to any such breach.

(*Id.*)

---

[3]    The New Jersey Franchise Protection Act (NJFPA) requires a 60-day notice period before lawful termination.  *See* N.J. Stat. Ann. § 56:10-5.

### 3.    *After the Notice of Termination*

On January 15, 2026—the day after MMNA sent the Notice of Termination—Saliba emailed Vossenberg that J&S (1) had satisfied its training requirements, (2) would be submitting its allocation requests to fulfill its inventory obligations now that it was eligible to receive Outlander PHEV Vehicles after completing the trainings, and (3) would fill staff positions by January 23, 2026. (ECF No. 9-2 at 3; ECF No. 9-4 at 2-3.) Saliba requested that Vossenberg and MMNA allow J&S "to move forward and demonstrate [its] commitment to the Mitsubishi brand." (ECF No. 9-4 at 3.) Saliba asserts it never received a response to this email from Vossenberg or any other MMNA representative. (ECF No. 9-2 at 3.)

On January 21, 2026, MMNA issued a separate Notice of Material Breach that did not reference the January 14, 2026 Notice of Termination. (ECF No. 9-2 at 4; ECF No. 9-5). The January 21, 2026 Notice asserted J&S breached by failing to use its "'best efforts' to promote the sale and service of Mitsubishi vehicles, parts, and accessories." (ECF No. 9-5 at 3.) The letter indicated MMA would "work with [J&S] over the next six months in an effort to improve the performance of [J&S's] dealership." (*Id.*) Saliba declared that as a result of this Notice of Material Breach, J&S "reasonably believe[d] the [January 14, 2026 Notice of Termination] had been suspended or withdrawn[.]" (ECF No. 9 at 2.)

Nonetheless, on January 28, 2026, J&S's General Sales Manager Levent Darkanat sent an email to MMNA's District Sales Manager John Strayhorn requesting that the January 14, 2026 Notice of Termination be lifted. (ECF No. 10-4 at 1-2; 10-5 at 2.) In the email, Darkanat wrote that J&S cured the breaches in the January 14 Notice by (1) complying with the PHEV training requirements as of January 24, 2026; (2) submitting an allocation request for PHEV vehicles as of January 16, 2026 to fulfill its inventory obligations now that the trainings were complete; and (3)

5

hiring and training a Service Advisor and Parts Manager.  (ECF No. 10-5 at 2.)  Accordingly, Darkanat "request[ed] written confirmation that the termination action has been lifted."  (*Id.*)

As for the trainings requirement, MMNA records indicate that J&S registered an individual named Jonathan Mora on January 19, 2026, and that from January 19 to January 21, 2026, a person using the login information for Mora completed 18 training modules, including the modules required to be a qualified Mitsubishi Parts Manager.  (ECF No. 10-8 at 2; ECF No. 10-10 at 2-3.)  The records also indicate that J&S registered an individual named Meet Ahir on January 20, 2026, and that from January 21 to January 22, 2026, a person using login information for Ahir completed 35 training modules including the modules required to be a qualified Mitsubishi Service Writer.  (ECF No. 10-8 at 3; *see also* ECF No. 10-11 at 2-3.)  The records demonstrate that the login credentials for both of these employees have not been used since the respective trainings were completed.  (ECF No. 10-8 at 3.)  MMNA Senior Manager Jack Freeman declared that the activity for these accounts "appears unusual, would have required many hours to complete, and would have precluded that person from doing any other working during this period."  (ECF No. 10-8 at 1, 3.)[4]

As for the inventory deficiencies, MMNA fulfilled J&S's allocation request—which was predicated on the completion of the training requirements—and delivered five Outlander PHEVs to J&S prior to the asserted effective date of termination.  (ECF No. 10-4 at 2.)[5]

---

[4]    When Strayhorn pressed Darkanat about the failure to complete the trainings between August 2025 and January 2026, Strayhorn asserts that Darkanat told him "'not to worry' about these issues" because "J&S would complete the . . . trainings modules . . . within a short period of time" and "Darkanat's brother would be completing the PHEV training modules for him and another J&S employee."  (ECF No. 10-4 at 2.)

[5]    On May 5, 2026, Saliba received a text message from Bill Cimino, the owner of J&S's competitor Cornerstone Mitsubishi, stating that he received Saliba's phone number from Vossenberg and sought to purchase Outlander PHEVs from Saliba.  (ECF No. 9-2 at 6.)  J&S

Finally, as for staffing deficiencies, Darkanat stated that J&S had "hired a new Service Advisor and a new Parts Manager,"—Mora and Ahir—and that "[b]oth employees are fully trained [and] have completed all required testing and certifications." (ECF No. 10-5 at 2.) However, Strayhorn declared that he visited J&S on a number of occasions from January 14, 2026 and March 18, 2026 and "did not observe Jonathan Mora filling the Parts Manager position, working at the parts counter at J&S, or serving in any other customer facing capacity at the dealership." (ECF No. 10-4 at 2-3.) And Mora's LinkedIn indicated that he worked as an Inventory Manager at a separate J&S entity named J&S Autohaus. (ECF No. 10-6 at 2.) Strayhorn also "did not encounter Meet Ahir serving in any capacity at J&S, Service Writer or otherwise." (ECF No. 10-4 at 3.) Ahir's Instagram account indicates that he is a buyer at J&S Autohaus. (ECF No. 10-7 at 2.) J&S offers no competing evidence as to Mora and Ahir. (*See generally* ECF Nos. 9, 11, 19.)

On February 1, 2026, Vossenberg emailed Saliba noting that Strayhorn received Darkanat's January 28, 2026 email but wrote that MMNA would not be rescinding the January 14, 2026 Notice of Termination until MMNA "confirmed that [J&S] has fully addressed the issues identified in the [Notice of Termination]." (ECF No. 10-1 at 2; ECF No. 10-3 at 2.) Vossenberg requested that further communications about the January 14, 2026 Notice of Termination come directly from Saliba rather than from other J&S employees, noted that he previously sought to meet with Saliba but Saliba declined, and indicated that a "one-on-one conversation would be helpful." (ECF No. 10-3 at 2.) Saliba did not respond to this email. (ECF No. 10-1 at 2.)

After 60-days' notice, on March 18, 2026, MMNA contends that the Dealer Agreement was terminated. (ECF No. 3-2 at 3.) On March 23, 2026, MMNA provided J&S with a written

---

contends that this text message "confirms that [J&S] did in fact obtain PHEV inventory after completing the certification requirements." (*Id.* at 7.)

Termination Repurchase Policy and Procedures Letter notifying J&S that the Dealer Agreement was terminated on March 18 and setting forth J&S's post-termination obligations. (*Id.* at 4; ECF No. 3-9.) Despite the termination, Vossenberg contends that J&S continues to display the Mitsubishi name and logo at the Ewing dealership location and uses Mitsubishi branding on its website and social media accounts. (ECF No. 3-2 at 4-6.) But because, according to MMNA, J&S is an unauthorized dealer, "J&S no longer has access to MMNA's training updates, technical service bulletins, or technical support resources for the repair and service of Mitsubishi vehicles," which "materially increases the risk of incorrect or incomplete repairs, safety issues, and customer dissatisfaction." (*Id.* at 6.) Further, J&S no longer has "automatic and timely access to MMNA's internal systems identifying active safety recalls applicable to Mitsubishi vehicles," so "J&S does not know whether a vehicle brought in for routine service is subject to outstanding recalls and cannot provide that information and those repairs to consumers." (*Id.*) Finally, J&S "does not have access to MMNA's secure online portal through which it reports new car sales information to MMNA." (*Id.*) As a result, "MMNA does not know who owns vehicles sold by J&S; does not know to initiate warranty coverage for retail purchasers; and cannot contact those customers with service updates, recall notifications, and other critical information." (*Id.*)

### B.    Procedural Background

On March 31, 2026—after the alleged termination date—J&S filed a Complaint in the Superior Court of New Jersey, Mercer County. (ECF No. 1-1.) J&S alleges MMNA violated the New Jersey Franchise Practices Act (NJFPA), N.J. Stat. Ann. § 56:10-1 *et seq.*, for terminating the franchise without good cause, (*id.* ¶¶ 1, 7, 38-49) (Count I), and is entitled to an automatic stay pursuant to N.J. Stat. Ann. § 56:10-30, (*id.* ¶ 1, 9). J&S also asserts claims for tortious interference with prospective economic advantage, (*id.* ¶¶ 50-55) (Count II), breach of the covenant of good faith and fair dealing, (*id.* ¶¶ 56-62) (Count III), breach of contract, (*id.* ¶¶ 63-69) (Count IV),

negligent misrepresentation, (*id.* ¶¶ 70-72) (Count V), equitable estoppel and waiver, (*id.* ¶¶ 73-77) (Count VI), violation of the NJFPA, N.J. Stat. Ann. § 56:10-5 for defective Notice of Termination, (*id.* ¶¶ 78-81) (Count VII), and a declaratory judgment, (*id.* ¶¶ 82-84) (Count VIII).

On May 6, 2026, before MMNA was served with the Summons or Complaint, MMNA removed the case to this Court.  (ECF No. 1.)[6]  On that same day, MMNA filed its Answer and asserted Counterclaims for breach of contract, (ECF No. 2 ¶¶ 46-52) (Count I), unfair competition under 15 U.S.C § 1125(a) (*id.* ¶¶ 53-63) (Count II), cybersquatting under 15 U.S.C § 1125(d), (*id.* ¶¶ 64-77) (Count III), violation of the New Jersey Unfair Competition Act, N.J. Stat. Ann. § 56:4-1, (*id.* ¶¶ 78-89) (Count IV); common law trademark infringement and unfair competition, (*id.* ¶¶ 90-99) (Count V), and declaratory relief, (*id.* ¶¶ 100-105) (Count VI).[7]

Also on that same day, MMNA filed the instant Motion for a Temporary Restraining Order and Preliminary Injunction.  (ECF No. 3.)  Among other relief, MMNA seeks an order enjoining and restraining J&S and its agents from using the Mitsubishi marks "in any manner or medium";

---

[6]     The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332.  (*See* ECF No. 1 at 2.)  As for personal jurisdiction and venue, the Dealership Agreement states that "all litigation between MMNA and [J&S] which may arise out of or in connection with this Agreement or any transaction between them shall be subject to the exclusive jurisdiction of the courts of the State of California or of the federal courts sitting therein."  (ECF No. 3-5 at 21) (emphasis omitted).  However, J&S initially filed this action in New Jersey state court, neither party has contested to the jurisdiction of the District of New Jersey, and courts in this District routinely decline to enforce forum selection clauses when the agreements are subject to the NJFPA.  *See Bus. Store, Inc. v. Mail Boxes Etc.*, Civ. No. 11-3662, 2012 WL 525966, at *6-10 (D.N.J. Feb. 16, 2012); *Goldwell of New Jersey, Inc. v. KPSS, Inc.*, 622 F. Supp. 2d 168, 171 n.1 (D.N.J. 2009).  Similarly, despite a California choice-of-law provision in the Dealer Agreement, the parties only present New Jersey law, so the Court will apply New Jersey law.  *See Instructional Sys., Inc. v. Comput. Curriculum Corp.*, 614 A.2d 124, 133-35 (N.J. 1992) (upholding application of New Jersey law to franchise-termination decision subject to the NJFPA despite California choice-of-law provision); *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 316-17 (3d Cir. 2014) (stating that "parties may waive choice-of-law issues" and finding waiver when parties did not challenge use of New Jersey law).

[7]     As of the date of this Opinion, J&S has not filed an Answer to MMNA's Counterclaims.

9

using the Mitsubishi name "in any trade name, advertising, signage, customer communications, domain name, website social media account, or business representation"; holding themselves out as an authorized Mitsubishi dealer or affiliate; selling, advertising, or servicing Mitsubishi vehicles in a manner suggesting authorization by MMNA; and continuing to operate internet platforms that incorporate Mitsubishi marks or suggest an affiliation with MMNA. (*Id.* at 3-4.)

Upon receipt of MMNA's Motion, the Court ordered the parties to propose an expedited briefing schedule, (ECF No. 4), and as part of that briefing, J&S submitted a Cross-Motion for a Preliminary Injunction, (ECF No. 9.) J&S seeks an order reinstating itself as an authorized Mitsubishi dealer under the Dealer Agreement; treating the Dealer Agreement as being in full force; preventing MMNA from authorizing a replacement dealer to operate at or near J&S's Ewing location and enforcing the January 14, 2026 Notice of Termination; and prohibiting MMNA from taking retaliatory action against J&S for pursuing this litigation. (*Id.* at 4-5.) Following the completion of briefing, the Court held a hearing on the Motions on July 1, 2026 and neither of the parties presented additional evidence. (ECF No. 19). The matter is now ripe for adjudication.

## II.    DISCUSSION

### A.    Automatic Stay Under N.J. Stat. Ann. § 56:10-30(a)

Under the NJFPA, "[u]pon timely institution of an action . . . to enjoin the termination of a motor vehicle franchise . . . the termination shall be automatically stayed pending the final disposition of such action or proceeding." N.J. Stat. Ann. § 56:10-30(a). MMNA argues J&S is not entitled to an automatic stay because J&S did not "timely" file this action given that it was filed almost two weeks after the March 18, 2026 termination date. (ECF No. 3-1 at 14.) J&S responds that its "failure to file a timely protest was directly caused by MMNA's own contradictory conduct, specifically, the issuance of the January 21, 2026 Notice of Material Breach." (ECF No.

10

9-7 at 29.)  As a result, J&S contends that its untimeliness should be excused by the doctrine of equitable estoppel.  (*Id.* at 18-21, 29-30.)  The Court finds J&S's position unpersuasive.

"To establish a claim of equitable estoppel, the claiming party must show that the alleged conduct was done, or representation was made, intentionally or under such circumstances that it was both natural and probable that it would induce action."  *Miller v. Miller*, 478 A.2d 351, 355 (N.J. 1984).  "The requirements of equitable estoppel are quite exacting" and the doctrine is applied "only in very compelling circumstances . . . where the interests of justice, morality and common fairness clearly dictate that course."  *Hoelz v. Bowers*, 278 A.3d 797, 804 (N.J. Sup. Ct. App. Div. 2022). "Equitable estoppel excuses a plaintiff's late filing if such lateness was caused by the defendant's deception."  *Hill. v. U.S. Gen. Servs. Admin*, Civ. No. 05-2092, 2008 WL 4371761, at *4 (D.N.J. Sep. 17, 2008) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1389 (3d Cir. 1994), *overruled on other grounds by Rotkiske v. Klemm*, 890 F.3d 422 (3d Cir. 2018)).

Here, the "exacting" requirements of equitable estoppel are not satisfied.  *Hoelz*, 278 A.3d at 804.  J&S asserts that it understood the January 14, 2026 Notice of Termination to be superseded by the January 21, 2026 Notice of Material Breach, (ECF No. 9-7 at 29), but the record does not support the application of equitable estoppel for several reasons.  First, the January 14, 2026 Notice of Termination states that "MMNA . . . does not waive its rights to raise any other breaches of Dealer Agreement that may exist now or in the future, and to issue notices of breach and/or termination pertaining to any such breach."   (ECF No. 3-8 at 4.)  Accordingly, MMNA did not mislead J&S into believing the January 14, 2026 Notice of Termination was superseded when it issued the January 21, 2026 Notice of Material Breach because the Notice of Termination specifically outlined that it could issue subsequent notices.  *Hill*, 2008 WL 4371761, at *4.

11

Second, the parties' conduct after the January 21, 2026 Notice of Material Breach demonstrates that both sides knew the January 14, 2026 Notice of Termination was still in effect. On January 28, 2026, J&S's General Sales Manager Levent Darkanat sent an email to MMNA's District Sales Manager John Strayhorn requesting that the January 14, 2026 Notice of Termination be lifted. (ECF No. 10-4 at 1-2; ECF No. 10-5 at 2.) And on February 1, 2026, Vossenberg emailed Saliba noting that MMNA was in receipt of Darkanat's January 28, 2026 email but would not be rescinding the January 14, 2026 Notice of Termination until MMNA "confirmed that [J&S] has fully addressed the issues identified in the [Notice of Termination]." (ECF No. 10-1 at 2; ECF No. 10-3 at 2.) Therefore, the "natural and probable" consequence of MMNA's actions was not that J&S would assume the Notice of Termination had been suspended and failed to timely file as a result of this assumption. *Miller*, 478 A.2d at 355. Instead, it would have been "natural and probable," based on MMNA's actions and even J&S's own actions, for J&S to believe the Notice of Termination was still in effect.

Without the protection of equitable estoppel, J&S is left with the fact that it filed the instant matter after the notice of termination took effect. But a franchisee is not entitled to an automatic stay if it fails to "timely" file its suit. *See* N.J. Stat. Ann. § 56:10-30(a). An action is not "timely" under the NJFPA when "the filing of the lawsuit occurred after the termination took effect." *Classic Motor Car Co. v. Automobili Lamborghini*, 2011 N.J. Super. Unpub. LEXIS 3142, at *20-21, *31-32 (N.J. Super. Ct. Ch. Div. Nov. 29, 2011) (finding automatic stay provision did not apply when franchisee filed suit one day after termination date); *c.f. J.P.T. Auto., Inc. v. Toyota Motor Sales, U.S.A., Inc.*, 659 F. Supp. 2d 350, 354, 361 (E.D.N.Y. 2009) (finding automatic stay provision did not apply under New York's Franchised Motor Vehicle Dealer Act when franchisee filed suit one day after termination date because the provision "only applies in cases where the

12

termination of the dealership has not yet occurred" (citing N.Y. Veh. & Traf. L. § 463(2)(e)(1)). Accordingly, J&S is not entitled to an automatic stay under the NJFPA, so the Court must evaluate whether an injunction—for either party—is appropriate under Rule 65.

**B.      Temporary Restraining Order and Preliminary Injunction Under Rule 65**

"Preliminary injunctive relief is an extraordinary remedy and should be granted only in limited circumstances." *Kos Pharms., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004) (citation modified). The elements for a preliminary injunction and a temporary restraining order are the same. *See Koons v. Reynolds*, 649 F. Supp. 3d 14, 22 (D.N.J. 2023). A party seeking a preliminary injunction or a temporary restraining order must establish that (1) he is reasonably likely to succeed on the merits, (2) he is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in his favor, and (4) an injunction is in the public interest. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 176 (3rd Cir. 2017); *see also HR Staffing Consultants, LLC v. Butts*, Civ. No. 15-3155, 2015 WL 3492609, *7 (D.N.J. June 2, 2015) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008)). If a plaintiff meets the first two factors, the court "then considers the remaining two factors and determines in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Reilly*, 858 F.3d at 179.

**1.      *Likelihood of Success on the Merits***

"To demonstrate a likelihood of success on the merits, [a p]laintiff must show that [it] 'can win on the merits (which requires a showing significantly better than negligible but not necessarily more likely than not).'" *Tracey v. Recovco Mortg. Mgmt. LLC*, 451 F. Supp. 3d 337, 342 (D.N.J. 2020) (citing *Reilly*, 858 F.3d at 179). Thus, a moving party must only show a "reasonable probability of eventual success in the litigation." *Reilly*, 858 F.3d at 176 (citation omitted). "[W]hether a party has met this threshold will necessarily vary with the circumstances of each

13

case . . . [and] the elements of the movant's claims. . . ." *Fres-co Sys. USA, Inc. v. Hawkins*, 690 F. App'x 72, 77 (3d Cir. 2017). Because the parties have filed cross-Motions, the Court addresses both whether MMNA is likely to succeed on the merits of its trademark infringement claim under the Lanham Act and whether J&S is likely to succeed on the merits of its unlawful termination claim under the NJFPA.[8]

"Once a franchise is terminated, the franchisor has the right to enjoin unauthorized use of its trademark under the Lanham Act." *S & R. Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 375-78 (3d Cir. 1992) (holding franchisor demonstrated likelihood of success on the merits of its trademark infringement claim when termination was lawful). It is undisputed that J&S continues to hold itself out as a franchisee and use the Mitsubishi trademark. (ECF No. 3-2 at 4-6.) The question therefore boils down to whether MMNA lawfully terminated the franchise. Accordingly, the cross-Motions are necessarily intertwined: both hinge on whether the termination was lawful, and if one party demonstrates a likelihood of success the other necessarily cannot.

Under the NJFPA, a franchisor may not "terminate, cancel or fail to renew a franchise without good cause." N.J. Stat. Ann. § 56:10-5. "For the purposes of this act, good cause for terminating, canceling, or failing to renew a franchise shall be limited to failure by the franchisee to substantially comply with those requirements imposed upon him by the franchise." *Id.* "That good-cause standard is similar to the legal concept of material breach, i.e., a breach that discharges the non-breaching party's obligation to perform its future contractual obligations." *Mall Chevrolet, Inc. v. Gen. Motors LLC*, 99 F. 4th 622, 631 (3d Cir. 2024). Accordingly, "New Jersey courts have

---

8   While the parties each assert several causes of action in their pleadings, (ECF No. 1-1 ¶¶ 38-84; ECF No. 2 ¶¶ 46-105), MMNA relies on its Lanham Act claim in its Motion and J&S relies on its NJFPA unlawful termination claim in its Cross-Motion, (ECF No. 3-1 at 15-17; ECF No. 9-7 at 21-25.)

recognized that a franchisee's material breach of a franchise agreement constitutes good cause for termination of a franchise." *Id.* (collecting cases). "[I]f a contract identifies a term as 'material' or an act or omission as a 'material breach,' then New Jersey courts generally defer to the parties' agreement on the materiality of that term, act, or omission." *Id.* Otherwise, "[t]o determine if a breach is material, [New Jersey courts] adopt the flexible criteria set forth in Section 241 of the Restatement (Second) of Contracts (1981)." *Roach v. BM Motoring*, *LLC*, 155 A.3d 985, 991 (N.J. 2017). In "proving good cause for termination . . . the motor vehicle franchisor shall be limited to the grounds for termination set forth in the written notice [of termination]." N.J. Stat. Ann. § 56:10-30(c).

Here, the January 14, 2026 Notice of Termination outlined three grounds for termination: "[(1) J&S's] repeated failure to require personnel to attend and complete required training; [(2) J&S's] failure to maintain a minimum inventory of Outlander PHEV vehicles for sale to retail customers; and [(3) J&S's] failure to comply with minimum staffing requirements in its service department." (ECF No. 3-8 at 3-4.)[9] The day after the Notice of Termination was issued, Saliba emailed Vossenberg that J&S (1) had satisfied its training requirements, (2) would be submitting its allocation requests to fulfill its inventory obligations now that it was eligible to receive Outlander PHEV Vehicles after completing the trainings, and (3) would fill staff positions by January 23, 2026. (ECF No. 9-2 at 3; ECF No. 9-4 at 2-3.) On January 28, 2026, Darkanat emailed

---

[9]     J&S argues the January 14, 2026 Notice of Termination was deficient because it erroneously cited to a North Carolina statute. (ECF No. 9-7 at 16.) The Court finds this argument unpersuasive. The NJFPA requires that a notice "set[] forth all the reasons for such termination . . . at least 60 days in advance of such termination." N.J. Stat. Ann. § 10-5. MMNA's Notice of Termination complied with these requirements, (*see* ECF No. 3-8), and an errant citation in a separate part of the Notice does not render the entire Notice defective.

Vossenberg requesting that the Notice of Termination be lifted because, in his view, J&S remedied each of the three breaches.  (ECF No. 10-5 at 2.)

However, on February 1, 2026, Vossenberg emailed Saliba noting that MMNA was in receipt of Darkanat's email but MMNA would not be lifting the Notice of Termination.  (ECF No. 10-3 at 2.)  Vossenberg explained that MMNA would not lift the Notice of Termination "until we've confirmed that your dealership has fully addressed the issues identified in the [Notice of Termination]," and at that point, Vossenberg was not satisfied that the issues were resolved.  (*Id.*)  Vossenberg noted that he previously requested to meet with Saliba to discuss the breaches, but that request was denied, and that he thought a "one-one-one conversation would be helpful."  (*Id.*)  Saliba did not respond to this email.  (ECF No. 10-1 at 2.)  And when questioned at the hearing, J&S could not identify any actions it took to remedy the breaches after this February 1, 2026 email.  (ECF No. 19 at 9.)

J&S's failure to take any action is fatal to J&S's claim that MMNA's termination was not for "good cause," and in turn demonstrates that the termination was lawful.  Under Section X.C of the Dealer Agreement, which governs termination procedures, MMNA may withdraw a notice of termination if J&S "cures *to MMNA's satisfaction* the condition or conditions upon which the notice is based."  (ECF No. 3-5 at 52, 55) (emphasis added).  On February 1, 2026, Vossenberg made it clear that MMNA was not satisfied with J&S's attempted cures, (ECF No. 10-3), so— under the Dealer Agreement—MMNA was not required to withdraw the January 14, 2026 Notice of Termination, (ECF No. 3-5 at 55).  Thus, because in MMNA's view—the view that matters under the Dealer Agreement—J&S did not cure its failure to "substantially comply with th[e] requirements imposed upon [it] by the franchise," and because those initial failures were set forth

in the Notice of Termination, the Court finds that MNNA had "good cause" to terminate the Dealer Agreement. N.J. Stat. Ann. § 56:10-5.

Even if Section X.C of the Dealer Agreement were unenforceable, or the Court was otherwise required to analyze cure efforts without regard to the parties' agreed upon language outlining that such a determination is for MMNA to make, the Court would still find MMNA had good cause to terminate.[10] In the January 14, 2026 Notice of Termination, the third ground for termination was J&S's "failure to comply with minimum staffing requirements in its service department." (ECF No. 3-8 at 3-4; *see also* ECF No. 3-5 at 40 (Section IV.D of Dealer Agreement requiring J&S to "employ qualified personnel in such capacities and in such number as may be specified in the Dealer Development Plan or as otherwise required by MMNA").)[11] J&S asserts it satisfied this requirement by hiring a Service Advisor (Meet Ahir) and Parts Manager (Jonathan Mora). (ECF No. 10-5 at 2.)

However, MMNA's District Sales Manager John Strayhorn declared that he visited J&S on a number of occasions from January 14, 2026 and March 18, 2026 and "did not observe Jonathan Mora filling the Parts Manager position, working at the parts counter at J&S, or serving in any other customer facing capacity at the dealership." (ECF No. 10-4 at 2-3.) And Mora's LinkedIn indicates that he works as an Inventory Manager at a separate J&S entity named J&S Autohaus. (ECF No. 10-6 at 2.) Strayhorn also "did not encounter Meet Ahir serving in any capacity at J&S,

---

[10]    If J&S believed MMNA was acting unreasonably with respect to its evaluation of J&S's attempts to remedy the breaches outlined in the January 14, 2026 Notice of Termination, J&S had the ability under the NJFPA to timely file a lawsuit to stay the termination. *See* N.J. Stat. Ann. 56:10-30(a). But as discussed *supra*, J&S failed to do so.

[11]    The Court need not analyze the first two grounds for termination to determine whether MMNA lawfully terminated the franchise under the NJFPA because it finds the third ground on its own is sufficient.

Service Writer or otherwise." (ECF No. 10-4 at 3.) Ahir's Instagram account indicates that he is a buyer at J&S Autohaus. (ECF No. 10-7 at 2.)

J&S offers no competing evidence as to Mora and Ahir, nor did it present any additional evidence at the hearing. (*See generally* ECF Nos. 9, 11, 19.) Instead, J&S contends that Strayhorn's statements are "contested, uncorroborated, out-of-court statements offered by an interested witness" and "this Court cannot credit disputed hearsay at the preliminary injunction stage[.]" (ECF No. 11 at 11.) Even if J&S's factual characterization were correct, J&S is incorrect as a matter of law. "[A] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Kos*, 369 F.3d at 718 (collecting decisions that have permitted admission of hearsay at a preliminary injunction stage); *Graceway Pharms., LLC v. Perrigo Co.*, 722 F. Supp. 2d 566, 579 (D.N.J. 2010) ("The [c]ourt . . . has considerable discretion in regard to relying on affidavits, self-serving or otherwise, in the context of a preliminary injunction.").

Perhaps recognizing this caselaw even if failing to cite to it, J&S concludes that "MMNA is . . . left to demonstrate that the remaining staffing deficiencies alone constitute 'good cause' for termination under the N.J. [Stat. Ann.] § 56:10-30." (ECF No. 11 at 12.) The Court finds that a failure to fill the Service Advisor and Parts Manager staffing roles constitute a material breach and therefore "good cause" to terminate. Indeed, many of the factors set forth in Section 241 of the Restatement (Second) of Contracts readily weigh in favor of material breach.[12] Without these

---

[12]     In determining whether a breach is material under the Restatement (Second) of Contracts, "the following circumstances are significant: (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected; (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived; (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture; (d) the likelihood

18

employees, MMNA will be "deprived of the benefit which [it] reasonably expected," Restatement (Second) of Contracts § 241(a), because the franchisee's service department will likely perform unsatisfactorily due to these staffing shortages, which will in turn affect not just MMNA's profits but also its reputation. For similar reasons, MMNA cannot be "adequately compensated" for this breach. *Id.* § 241(b). Finally, at least based on the record before the Court, J&S appears to have misrepresented that the roles were filled by individuals who instead work at a separate J&S entity. (ECF No. 10-4 at 2-3; ECF No. 10-5 at 2; ECF No. 10-6 at 2; ECF No. 10-7 at 2.) Therefore, the Court finds that J&S has "fail[ed] to . . . comport with standards of good faith and fair dealing" and will be "[un]likel[y] . . . to cure [its] failure." Restatement (Second) of Contracts § 241(d)-(e); *see also Mall Chevrolet,* 99 F.4th at 635 (holding that a franchisor may use "evidence that it later obtained to support the reason and grounds that it identified in its notice of termination"); *Dunkin' Donuts of Am., Inc. v. Middletown Donut Corp.*, 495 A.2d 66, 72–73 (N.J. 1985) (explaining that the NJFPA protects only innocent franchisees); *Amerada Hess Corp. v. Quinn,* 362 A.2d 1258, 1267  (N.J. Super. Ct. Law Div. 1976) ("[P]rotection of the public's welfare points toward termination of dishonest franchisees.").

Accordingly, the Court holds that the termination was lawful under the NJFPA, so J&S is unlikely to succeed on its NJFPA claim. Consequently, MMNA is likely to succeed on its trademark infringement claim because J&S continues to hold itself out as a franchisee. *Jiffy Lube*, 968 F.2d at 375. The Court will therefore analyze the remaining Rule 65 factors as applied to

---

that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; [and] (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing." Restatement (Second) of Contracts § 241.

MMNA but not as to J&S.  *See Reilly*, 858 F.3d at 179 ("[A] movant for preliminary equitable relief . . . must demonstrate that it can win on the merits[.]")

### 2.    *Irreparable Harm*

Although MNNA has shown it is likely to succeed on the merits, it still "bears the burden of showing irreparable injury" if its Motion is not granted.  *Reilly*, 858 F.3d at 180 n.5.  This is "not an easy burden" to carry; it will be met only if MMNA "demonstrates a significant risk that [it] will experience harm that cannot adequately be compensated after the fact by monetary damages. *Adams v. Freedom Forge Corp.*, 204 F.3d 475, 485-86 (3d Cir. 2000) (citations omitted); *see also Reilly*, 858 F.3d at 179 n.4 ("[T]he availability of money damages for an injury typically will preclude a finding of irreparable harm.").  Moreover "[t]he irreparable harm alleged must be actual and imminent, not merely speculative." *Moneyham v. Ebbert*, 723 F. App'x. 89, 92 (3d Cir. 2018).

In 2020, however, Congress passed the Trademark Modernization Act (TMA), which clarified the analysis a district court must undertake when evaluating irreparable harm in the trademark infringement context. *See Nichino Am., Inc. v. Valent U.S.A., L.L.C.*, 44 F.4th 180, 182-83 (3d Cir. 2022).  Under the TMA, a party seeking an injunction "shall be entitled to a rebuttable presumption of irreparable harm . . . upon a finding of likelihood of success on the merits . . . in the case of a motion for a preliminary injunction or temporary restraining order."  15 U.S.C § 1116(a).  After the presumption has been established, "the court assumes irreparable harm, even if the [party who has shown a likelihood of success on the merits] has proffered nothing in support." *Nichino Am.*, 44 F.4th at 186.  To rebut the presumption, the other party must "introduce evidence sufficient for a reasonable factfinder to conclude that the consumer confusion is unlikely to cause irreparable harm." *Id.*  "If [the other party] successfully rebuts the TMA's presumption by making this slight evidentiary showing, the presumption has no further effect" and "the burden

20

of production returns to the [party who has shown a likelihood of success] to point to evidence that irreparable harm is likely absent an injunction." *Id.* If the burden of production returns, "the evaluation outlined in [*Interpace Corp. v. Lapp, Inc.*, 721 F.2d 460 (3d Cir. 1983)] may prove useful to assess whether consumer confusion will lead to irreparable harm." *Id.*

Here, MMNA has demonstrated a likelihood of success on the merits, so it is entitled to a rebuttable presumption of irreparable harm. *Nichino Am.*, 44 F.4th at 186; 15 U.S.C § 1116(a). J&S argues that "MMNA's claimed 'harm' from J&S's continued operation as a Mitsubishi dealer is speculative and overstated," but J&S points to no evidence in the record demonstrating why this harm would not be irreparable. (*See* ECF No. 9-7 at 29; *see also* ECF No. 11 at 14.) Accordingly, because the Court must assume irreparable harm, and because J&S has not "introduced evidence sufficient for a reasonable factfinder to consider that consumer confusion is unlikely to cause irreparable harm," the inquiry ends here and MMNA has satisfied this second factor. *Nichino Am.*, 44 F.4th at 186.

### 3. Balance of the Equities

Under this third factor, a district court must consider "the harm [a franchisee] might suffer should the relief be granted." *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998); *see also Jiffy Lube*, 968 F.2d at 379 ("[The franchisor] must also show that its benefits from a preliminary injunction are not outweighed by irreparable injury to [the franchisee]."). However, "a party's self-inflicted harm by choosing to stop its own performance under the contract and thus effectively terminating the agreement is outweighed by the immeasurable damage done to the franchisor of the mark." *Pappan*, 143 F.3d at 806 (citations omitted). Here, any injury J&S is likely to suffer is self-inflicted as a result of its failure to comply with the Dealer Agreement or take adequate steps to prevent the termination. Thus, this third factor weighs in MMNA's favor.

#### *4.    Public Interest*

"Lastly, a district court must consider whether the issuance of a preliminary injunction serves the public interest before granting preliminary injunctive relief." *Pappan*, 143 F.3d at 807. "Public interest can be defined a number of ways, but in a trademark case, it is most often a synonym for the right of the public not to be deceived or confused." *Opticians Ass'n of Am. v. Indep. Opticians of Am.*, 920 F.2d 187, 197 (3d Cir.1990). Because J&S continues to hold itself out as an authorized MMNA dealer, including by displaying the Mitsubishi name and logo at the Ewing dealership location and using Mitsubishi branding on its website and social media accounts, (ECF No. 3-2 at 4-6), the Court finds that J&S's use of the Mitsubishi mark is likely to cause confusion. Therefore, because an injunction will put an end to this confusion, this final factor supports an injunction.

## III.    CONCLUSION

For the foregoing reasons, and other good cause shown, MMNA's Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 3) is **GRANTED**, and J&S's Cross-Motion for a Preliminary Injunction (ECF No. 9) is **DENIED**. An appropriate Order follows.


Dated: July 1, 2026

GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

22